**768-15**

PETITION NO. PD-0768-15

IN THE

COURT OF CRIMINAL APPEALS

AT AUSTIN, TEXAS

ORIGINAL

---

DANIEL FRANK LONGORIA, Jr.                    PETITIONER

Vs.

THE STATE OF TEXAS                            RESPONDANT

---

PETITIONER'S PETITION FOR DISCRETIONARY REVIEW

---

On Appeal from the Ninth Judicial District Court of Appeals at Beaumont in No. 09-13-00169-Cr from the 221st Judicial District Court of Montgomery County in No. 12-05-05213-CR.

---

FILED IN
COURT OF CRIMINAL APPEALS

OCT 01 2015

Abel Acosta, Clerk

Daniel Frank Longoria, Jr.

#01851803-Coffield

2661 FM 2054

Tenn.Colony, Tx. 75884

Pro se.

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 29 2015

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

## IDENTITY OF JUSTICES, JUDGE, PARTIES, AND COUNSEL

JUSTICES: Before Kreger, Horton, and Leanne Johnson (opining Justice): 1001 Pearl St., ste. 330, Beaumont, Tx. 77701.

JUDGE AT TRIAL: Honorable Lisa Michalk: 221st Judicial District Court, 207 West Phillips, Conroe, Texas 77301.

PETITIONER: Daniel Frank Longoria, Jr: #01851803, Coffield unit, 2661 FM 2054, Tenn.Colony, Tx. 75884.

PETITIONER'S APPELLATE COUNSEL: Mr. Darin J. Ray: 902 N. San Jacinto st., Conroe, Texas 77301.

PETITOINER'S TRIAL COUNSEL: Micheal Griffin (1st chair): 122 W. Davis st., Conroe, Texas 77301; and Mr. Brian Cain (2nd chair): 122 W. Davis St., Conroe, Texas 77301.

RESPONDANT: The State of Texas.

RESPONDANT'S APPELLATE COUNSEL: Mr. Bill Delmore: 207 W. Phillips Second Floor, Conroe, Texas 77301.

RESPONDANT'S TRIAL COUNSEL: Ms. Jo Ann Linzer (1st chair): 207 W. Phillips, Second Floor, Conroe, Texas 77301; and Ms. Mary Nan Huffman (2nd chair): 207 W. Phillips, Second Floor, Conroe, Texas 77301.

# TABLE OF CONTENTS

CONTENTS:                                                          PAGE #

Cover                                                                i

Identity of Justices, Judge, Parties, and Counsel                   ii

Table of Contents                                                   iii

Index of Authorities                                                 v

Statement Regarding Oral Argument                                   vii

Statement of the Case                                               viii

Statement of Procedural History                                     ix

Statement of Jurisdiction                                           x

Questions for Review:                                               xi

> 1· Allowing GPS technology by another county
> (showing Petitioner being on the leg monitor
> during guilt/innocence), and serving as evi-
> dence of character conformity, rather than
> proving consciousness of guilt or flight of
> the crime.  Should there be a standing aut-
> hority(-ies) concerning the admissibility of
> the GPS leg monitoring? See RR4, 177-184;
> RR5, 50-67.                                                        1-3

> 2· Acknowledging the fact that the Ninth
> Court of Appeals held the GPS technology was
> relevant to the Petitioner's case; did the
> Ninth Court of Appeals unreasonably depart
> from the accepted and usual standard of re-
> valancy, when it failed to Acknowledge whet-
> her the GPS technology was either more pro-
> bable or less probable than it would be
> without the evidence? See RR4, 177-184; RR5,
> 50-67.                                                             3-9

## TABLE OF CONTENTS

**CONTENTS:**                                                                    **PAGE #**

3· Calling for this Honorable Court of
Criminal Appeals' power of supervision,
was the Ninth Court of Appeals' decision of
the probative value of the evidence not be-
ing sustantially outweighed by the danger of
unfair prejudice unreasonably egnored other
facts (admitted by the State) that severely
reduced the probative value of the GPS sys-
tem? See RR4 and RR5 generally.                         9-13
3b· Does this conflict with this Honorable
Court of Criminal Appeal's decisions on the
same fact issue? See RR4, 177-184; RR5, 50-
67.                                                                              9-13

Prayer for Relief                                                                14

Inmate Declaration                                                               15

Proof of Mailing                                                                 16

Appendix A:                                                                      Affixed

The Ninth Court of Appeals Memorandum Opinion by:

Justices Leanne Johnson (opining Justice), Kreger, and

Horton—Affirming trial courts judgement on June 25, 2014.

CASELAW:                                                    PAGE #

Bigby v. State, 892 S.W.2d 864, 883 (Tex.App.Crim.

  1994)                                                     10,11,12

Brown v. State, 163 S.W.3d 818 (Tex.App.--Dallas,

  2005)                                                     2

Dixon v. State, No. 01-11-00443-CR (Tex.App. --

  Houston [1st Dist] June 28, 2012)(not designated

  for publication)                                          2

Ex Parte Daniel F. Longoria, Jr., No.WR-83,036-01

  (Tex.Crim.App. June 3, 2015(per Curiam)(not de-

  signated for publication)                            .    ix

Gilgliobianco v. State, 210 S.W.3d 637 (Tex.Crim.App.

  2006)                                                     10,11

Ladner v. State, 868 S.W.2d 417 (Tex.App.--Tyler,

  1993)                                                     5,7

Longoria v. State, No. PD-0768-15 (Tex.Crim.App.

  June 26, 2015)                                            ix

Montgomery v. State, 810 S.W.2d 372 (Tex.Crim.App.

  1990)                                                     4,10

Robinson v. State, 368 S.W.3d 588 (Tex.App.--Austin,

  2012)                                                     2

Saenz v. State, No. 13-10-00216-CR (Tex.App. --Corpus

  Christi, February 17, 2011)(not designated for

  publication)                                              2

Tennison v. State, 969 S.W.2d 578 (Tex.App-- Texar-

CASELAW:                                                          PAGE #

    kana, 1998)                                              6,7

Wilson v. State, 195 S.W.3d 193 (Tex.App.-- San

    Antonio 2006)                                            2


**TEXAS RULES OF APPELLATE PROCEDURE:**

Rule 9.3(b)                                                      ix

Rule 66.3(a)                                                     x,9,12

Rule 66.3(f)                                                     x,3,9,12


**TEXAS RULES OF EVIDENCE:**

Rule 401                                                         4

Rule 404(b)                                                      5,7

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument will be beneficial to this Honorable Court of Criminal Appeals because of the ever changing state of the caselaw within Texas, and the lack of Precedent concerning the GPS Techology pertaining to Petitioner's Question Number 1.

## STATEMENT OF THE CASE

On September 11, 2012, the Petitioner was indicted for murder, and the Petitioner plead not guilty to the charged offense. CR, 24; RR3, 5. A jury was empanelled on March 18, 2013, and the jury found the Petitioner guilty for murder. RR6, 69. After hearing additional evidence, the same jury assessed punishment at life in the Texas Department of Criminal Justice on March 21, 2013. RR7, 91.

A Jury found Petiioner guilty of Murder and sentenced him to life in prison on March 21, 2013. RR7, 91. The Petitioner properly filed a notice of appeal to the Ninth Court of Appeals at Beaumont. Cr, 111; Appendix A *1. Justices Leanne Johnson (opining Justice), Kreger, and Horton Affirmed the trial courts Judgement on June 25, 2014. Appendix A *10. The Petitioner did not file a motion for rehearing within the 9th Court of Appeals.

The Petitioner filed a Habeas Application to seek for an out-of-time Petition for Discretionary Review (PDR). See Ex Parte Daniel F. Longoria, Jr., No. WR-83,036-01 (Tex.Crim.App. June 3, 2015)(Per Curiam). This Honorable Court granted the Petitioner the ability to file an out-of-time PDR on June 3, 2015 id. The Petitioner was granted an extention of time by this Honorable Court on June 26, 2015. See Longoria v. State, No. PD-0768-15 (Tex.Crim.App. June 26, 2015)(Postcard)(This Honorable Court suspended rule 9.3(b) of the T.R.A.P. on the same day for the same cause number).

The Petitioner's deadline to file his PDR falls on September 28, 2015. id. Petitioner now tiemly files his PDR on or before September 28, 2015.

1· Pursuant to the Texas Rules of Appellate Procedure 66.3 (a), the Ninth Court of Appeals' decision is in conflict with other Precedent law on the same fact and law issue.

2· Pursuant to the Texas Rules of Appellate Procedure 66.3 (f), the Ninth Court of Appeals has unreasonably departed from the accepted and usual standard used in matters of relevancy.

3· Pursuant to the Texas Rules of Appellate Procedure 66.3 (f), the Petitioner calls for this Honorable Court's exercise of its great power of supervision to set a Precedant Law concerning the admissibility of the GPS technology from another county—an ankle monitor during guilt/innocence phase.

4· Pursuant to the Texas Rules of Appellate Procedure 66.3 (f), the Petitioner calls for this Honorable Court's intervening power of Supervision to weigh the true facts out that severely reduced the probative value against the prejudicial effect of the GPS technology from another county—an ankle monitor during guilt/innocence phase of Petitioner's trial.

1· Allowing GPS technology by another county (showing Petitioner being on the leg monitor during guilt/innocence), and serving as evidence of character conformity, rather than proving consciousness of guilt or flight of the crime. Should there be a stadning authority(-ies) concerning the admissibility of the GPS leg monitoring? See RR4, 177-184; RR5, 50-67.

2· Acknowledging the fact that the Ninth Court of Appeals held the GPS technology was relevant to the Petitioner's case; did the Ninth Court of Appeals unreasonably depart from the accepted and usual standard of revalancy, when it failed to Acknowledge whether the GPS technology was either more probable or less probable than it would be without the evidence? See RR4, 177-184; RR5, 50-67.

3· Calling for this Honorable Court of Criminal Appeals' power of supervision, was the Ninth Court of Appeals' decision of the probative value of the evidence not being substantially outweighed by the danger of unfair prejudice unreasonably harmful to Petitioner; when the Ninth Court of Appeals blantently egnored other facts (admitted by the State) that severely reduced the probative value of the GPS system? See RR4, and RR5 generally.

3b·ꝺDoes this Conflict with this Honorable Court of Criminal Appeals' decisions on the same fact issue? See RR4, 177-184; RR5, 50-67.

## QUESTION NUMBER ONE

Allowing GPS technology by another county (showing Petitioner being on the leg monitor during guilt/innocence), and serving as evidence of character conformity, rather than proving consciousness of guilt or flight of the crime. Should there be a standing authority(-ies) concerning the admissibility of the GPS leg monitoring? See RR4, 177-184; RR5, 50-67.

At the time of the shooting, Petitioner is on bond of Ft. Bend County for aggravated assualt. RR4, 164. As a condition of that bond, Petitioner is required to wear a GPS tracking device. RR4, 164. Petitioner becomes separated from the GPS tracking device at approximately 10:49P.M. on May 13, 2012, in Waller County, Texas. RR5, 66. Petitioner is arrested in this cause on July 7, 2012. RR4, 156.

At trial, the Court allows GPS evidence informing the jury that Petitioner is being tracked by another county, prior to the shooting in this cause, using a GPS device. RR4, 177-184; RR5, 50 67. Petitioner's counsel objects to the prejudicial nature of the evidence. RR4, 165, 176. Further, the court allows a video relating to the GPS monitoring into evidence. RR4, 167. This video shows the following words at the bottom of the screen: zone, tamper, battery, strap, motion, GPS. RR4, 167. Petitioner's Counsel objects to the prejudicial nature of the words at the bottom of the GPS video. RR4, 169, 172, 176. Petitioner's Counsel suggests a means of showing the evidence without the objec-

tionable words. RR4, 173.

The Petitioner has conducted a thorough research concerning any caselaw(s) that deals with GPS technology. The Petitioner found, but not limited to, the following:

In Texas, there are many circumstances wherein tracking a defendant's movement is allowed as evidence in the guilt/innocence phase of a trial. See Brown v. State, 163 S.W.3d 818 (Tex. App.--Dallas, 2005, pet. ref'd)(employer tracks work truck defendant drives with GPS system); Wilson v. State, 195 S.W.3d 193 (Tex.App.--San Antonio 2006, no pet.)(Sprint employee testifies as to the location of defendant's cell phone using tracking techniques); Robinson v. State, 368 S.W.3d 588 (Tex.App.--Austin 2012 pet. ref'd)(deputy testifies as to the location of defendant's cell phone using tracking techniques), Dixon v. State, No.01-11-00443-CR (Tex.App.--Houston [1st dist] June 28, 2012, Pet. ref'd)(Mem.op., notdesignated for publication)(tracking of officer's patrol vehicle using GPS technology allowed as evidence), Saenz v. State, No. 13-10-00216-CR (Tex.App.--Corpus Christi Febraury 17, 2011)(mem.op. Not designated for publication)(Detective testifies as to the location of defendant's cell phone during a shooting using tracking tracking technology).

What is the sole purpose of presenting the above cases to this Honorable Court? Axiomly, none of these cases involve a defendant being tracked by a county with a GPS ankle monitor at the time of the offense! Truly, Petitioner's counsel (including

Petitioner) found no case(s), in Texas, in which evidence that a defendant is being tracked via GPS technology by another county is allowed in front of a jury during the guilt/innocence phase of a trial. See Appellant's brief filed on July 30th 2013. Therefore, the Petitinoer believes (pursuant to rule 66.3(f)) that there should be a standing authority on this very fact issue The benifit of a Precedent will not only instruct the courts on how to proceed, but to provide guidance to them when it comes to dealing with GPS ankle monitor's during guilt/inncence. Is it admissible or is it not admissible? The Petitioner stands with confidence that the following two questions will show how this GPS monitoring is not admissible, and how it can be prejudicial to one's case. Nevertheless, the Petitioner will not limit this Honorable Court's analysis to make a new and sole precedent on this very issue.

Finally, this Honorable Corut should grant this Petition to make new and governing authority on the issue of presenting GPS tracking device (ankle monitoring) from another county being eit- her admissible or not admissible during the guilt/innocence phase

## QUESTION NUMBER TWO

Acknowledging the fact that the Ninth Court of Appeals held the GPS technology was relevant to the Petitioner's case; did the Ninth Corut of Appeals unreasonably depart from the accepted and usual standard of relevancy, when it failed to acknowledge whet-

her the GPS technology was either more probable or less probable than it would be without the evidence? See RR4, 177-184; RR5, 50-67.

This Honorable Court of Criminal Appeals in Montgomery v. State [810 S.W.2d 372, 391 (Tex.Crim.App. 1990)], instructed that "the trial court must rely in large part upon its own observations and experiences of the world, and reason from there in de-ciding whether proffered evidence has "any tendency to make the existance of any fact of consequence to make the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Supra. The determination of rele-vance, vel non, thus depends upon one judge's perception of common expericance. See Weinstein & Berger, Supra, ¶ 401[01], at 401-10. The process cannot be wholly in common expercience a perticular inference is available. Where there is room for such disagreement, an appellate court that reverses a trial court's ruling on relevancy accomplishes nothing more than to substitute its own reasonable perception of common experience for that of the trial court. ... where the appellate court can say with con-findence that by no reasonable perception of common exprerience can it be concluded that proffered evidence has a fact of conse-quence more or less probable than it would otherwise be, then it canbe said the trial court abused its discretion to admit that evidence.

The focus here is the relevancy of the GPS technology from

another county. Relevant evidence is evidence that has a tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. This definition includes two main components. First, the evidence must be material, i.e., that the proposition for which the evidence is offered must be of consequence to the determination of the case. Second, the evidence must be probative, i.e., it must make the existance of the fact more probable or less probable than it would be without the evidence. Ladner v. State, 868 S.W.2d 417, 422-23 (Tex.App.-- Tyler, 1993).

The Ninth Court of Appeals held the GPS evidence is relevant to material issues in the case, such as the perpetrator's identity, his flight, and his consciousness of guilt, becuase this evidence establishes Longoria's movements (both before and after the murder), as well as the timing of his removal of the GPS device. Accordingly, the trial court did not commit error in allowing the GPS evidence into the record because it was admissible for purposes other than character conformity under Rule 404(b). We overrule issue one. See Appendix A *8.

The Petitioner questions the Ninth Court of Appeals' decision because the Ninth Court of Appeals never completed, or acknowledged, the second main component of the Relevancy Test. Within the first main component, while it is true, the Ninth Court of Appeals satified the first prong becuase the GPS tech-

nology can be to Petitioner's case. See Tennison v. State, 969 S.W.2d 578, 580 (Tex.App.--Texarkana, 1998); Appendix A *8. However, there can be no logical or legal reason for failing to uphold, and decide, the well known second main component of this Relevancy Test.

The trial judge understood the Prejudicial nature of the evidence when she allows it as evidence of consciousness of guilt and flight after the crime. RR4, 171. In addition to this, there is an abundance of other evidence that shows the Petitioner's movement before and after the crime.

Raquel Nazario, the decedent's daughter, places Petitioner at the park (RR3, 47) and at her father's house at the time of the shooting. RR3, 67. Marissa Saucedo, the deceased's niece, places Petitioner at the park. RR4, 28. Roger Keys, a caretaker at the park, places Petitioner at the park. RR4, 84. Marty Joe McInnis, Peititioner's girlfriend's father, places Petitioner at the park. RR4, 119. Detective Paul Hahs places Petitioner at the park and the scene fo the shooting by use of a video in conjunction with eyewitness interviews. RR5, 36-41. Imagin McInnis, Petitioner girlfriend's daughter, places Petitioner at the park, RR5, 207, and at the hose at the time of the shooting. RR5, 224-230. Raymundo Zarate, III, the deceased's son, places Petitioner at the park, RR6, 11, and at the house at the time of the shooting. RR6, 28. Axiomly the Petitioner does not even contest his movements on the day of the crime, nor does he contest the fact

of Petitioner being at the park, nor at the decease's house!

The question here is: "Does the GPS technology (being a leg monitor from another county) increase one's knowledge and enhance the likelihood of showing that the Petitioner was at the park, or at the decease's house, when compared to the abundance of other evidence proving the same given facts?" **No!** It does not increase the likelihood of ascetaining the truth about this given fact. Ladner, 868 S.W.2d at 422-23. Truly, the probative value of this evidence was highly decreased because of the abundance of other evidence that shows the Petitioner's movement before and after the crime. See Tennison, 969 S.W.2d at 580.

Even though the Texas rules of Evidence 404(b) allows for eivdence of character conformity to be presented (in front of the jury) to show flight of the crime. Is their any relevency in the probative value of the GPS technology from another county, when their is a great amount of evidence that already shows that Petitioner had fled from the scene? See Tex.R.App.Proc., 404(b).

Imagin McInnis, Petitioner's girlfriend's duaghter, testifies about Petitioner's location throughout the day fo the murder and in flight away from the murder. RR5, 207-237. Imagin testifies that Petitioner ordered occupants of the car to throw out their phones. RR5, 231. The only reasonable inference from this is that Petitioner knows that phones can be tracked with GPS technology. Thus, if the State introduced this GPS technology, it would be admissible under the Texas law, further proving Peti-

tioner's guilty state of mind, and the evidence of flight from the scene. Furthermore, detective Paul Hahs testifies extensively on the attempts to locate Petitioner after the murder. RR5 41-90.

Very little of this evidence has anything to do with the GPS monitoring. Therefore, is there any probative value of the GPS monitoring to proof flight of the crime? **Very little!** The GPS tracking only confirms what Imagin tells the officers, and what the officers told the jury. RR5, 67. It would have been simple for the state to say where they recovered property that could have been used to track and apprehend Petitioner if Petitioner had not discarded it. It would also have been very simple for the State to argue that a reasonable inference is that Petitioner is in flight at the time he discards the items that could have been used to track him, such as the cell phones.

Finally, the important question that Petitioner inquires from this Honorable Court of Criminal Appeals is: "Is the GPS technology of another county (being a leg monitor in connection to the Aggravated Assualt charge) more probable than it would be without the evidence?" **No!** If this Honorable Court set aside this GPS monitoring evidence, as the Petitioner has shown, this Honorable Court will be able to concluded with confidence that the jury would have still been able to place the Petitioner at the scene, at the park, during Petitioner's flight of the crime, and simply all of the movements of the Petitioner concerning this

criminal offense. Therefore, this Honorable Court can also conclude with confidence that the Ninth Court of Appeals' decision is erroneous and in conflict with other precedent law. Further, the Petitioner believes, with confidence and respect, that this Honorable Corut should grant this Petition for further review. See TexR.App.Proc., 66.3(a), (f).

## QUESTION NUMBER THREE

Calling for this Honorable Court of Criminal Appeals' power of supervision, was the Ninth Court of Appeals' decision of the probative value of the evidence not being substantially outweighed by the danger of unfair prejudice unreasonably harmful to Petitioner; when the Ninth Court of Appeals blantently egnored other facts (admitted by the State) that severely reduced the probative value of the GPS system? See RR4, and RR5, generally.

**Part B:** Does this Conflict with this Honorable Corut of Criminal Appeals' decisions on the dame fact issue? See RR4, 177-184; RR5, 50-67.

The Ninth Court of Appeals held the probative value of the GPS evidence (showing Longoria's movements and actions immediately before, during, and after the commission of the crime) was significant, because this evidence was relevant to establishing the identity element of the crime. In establishing Longoria's flight after the murder, the GPS evidence demonstrated his consciousness of guilt, and tended to rebut the defendant's misidentification theory defense developed by the defendant during

the cross-examination of one of the State's witnesses and during the defendant's closing argument. See Appendix A *9.

However, It has well been settled that in assessing the probative value of evidence, an appellate court **must** look to the strength fo the proponent's other evidence and the need the proponent has for the evidence in question. See Bigby v. State, 892 S.W.2d 864, 883 (Tex.Crim.App. 1994). The Petitioner assures this Honorable Corut of Criminal Appeals that, "Probative value", means more than simply relevance. Gilgliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App. 2006)(citing old chief v. U.S., 519 U.S. 172, 184, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).

Rather, the "Probative value" refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existance of a fact of consequence to the liligation—coupled with the proponent's need for that item of evidence. We explained in Mongomery v. State, 810 S.W.2d 372, 390 (Tex.Crim.App. 1990)(op. on reh'g), that "[w]hen the proponent [of an item of evidence] has other compelling or undisputed evidence to establish the proposition or fact that the [item of evidence] goes to prove, the [probative value of the item of evidence] will weigh far less than it otherwise might in the probative-versus-prejudicial balance." Id.

Considering the over whelming facts presented in the Petitioner's petition herein, and other and same compelling and undisputed facts completely diminished the probative value of the

GPS monitoring from other county. Further, the Ninth Court of Appeals' decision was misplaced when it came to the use of Petitioner's misidentification. No where in the record did the State (or the trial judge) offer or allow the GPS monitoring from another county for the use of identification. The trial jduge solely allowed the GPS monitoring in to establish "the consciousness of guilt and flight after the crime." RR4, 171. In other words, the GPS monitor was stricken down to the movements of the petitioner at the time of the offense. RR4, 171-184.

Again, the Ninth Court of Appeals is not at liberty to blantantly egnore this Honorable Court's decision made in Gigliobianco. then push it to the side and hold that "Longoria failed to preserve the 'cumulative evidence' argument for appeal. See Appendix A *5; compare Appendix A *9. Just to egnore the other evidence that wieghs against the probative value of the GPS monitoring. Furthermore, this is in complete condiction to this Honorable Court's "probative value" definiation because the focus is on the "other compelling or undisputed evidence to establish" the weight of the probative force. See Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App. 2006); compare, Appendix A *5,9.

Finally and clearly, the probative force of the GPS monitoring is very little to none, when objectively viewing the abundance of the other evidence that is undisputed on the same purpose. Just as this Honorable Court states: "probative value refers to the inherent probative force of an item of Evidence—

that is, how strongly it serves to make more or less probalbe the existance of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." Giglio-biance, 210 S.W.3d at 641. Therefore, this very situation is deserving of this Honorable Court's attention to grant this Petitioner for discretionary review. See Tex.R.App.Proc. 66.3(a), (f).

In regards to the unfair prejudice, the Petitioner presence the following, but not limited to, as shown:

The Ninth Court of Appeals ultimately decided: "It was with-in the zome of reasonable disagreement for the trial court to find that the probative value of the evidence was not substan-tially outweighted by the danger of unfair prejudice." Appendix A *9-10.

Harm. Is there any harm that was done in the admission of the GPS monitoring? The Petitioner believes that the answer that this Honorable Court can greatly ~~conceerner~~ consider is yes—there is egre-gious harm. First, the GPS monitor has very little probative value as explained. Second, there is an irrational impression on the GPS monitoring evidence because the monitor **naturally** gives a false impression that the Petitioner committed another murder, or an extremely aweful cirme of soem sort. Although the trial judge did not allow the charge of the crime to be exposed to the jury, there is no record of the judge limiting the jury to not consider why the Petitioner was on the monitor, and stricken their consideration down to only Petitioner's movement at the

time of the offense.

Third, the State took a large amount of the trial to introduce and present the GPS evidence. Given the large amount of time, it is impossible for the jury to not consider the obvious question: "what idd the accused do to get on the GPS monitor?" In other words, it took their minds of off—during their deliberation—who pulled the trigger, when their is evidence that clearly establishes another person being seen on the secne with a handgun. And lastly, Is there a need for the GPS evidence? If this Honorable Court can set the GPS evidence aside, and conclude that the State established the dame facts (of flight and his movement at the scene) without the GPS evidence; then, there is no need for the GPS evidence at all.

Axiomly, the unfair prejudice clearly outweighes the probative value at hand. Truly, the facts of this case fit into a righteous reversal at hand.

Finally, to give inference to the facts presented in this petitioner, this Honorable Court can conclude—with confidence—that the unfair prejudice substantialy outweighes the probative value. Therefore, the Ninth Court of Appeals' decision is in complete contradiction to the well establish case law holdings on the same fact issue as in this case.

As an entirety, this petition should be granted, in whole, or in part, or as this Honorable Court deems fit.

## PRAYER FOR RELIEF

Petitioner prays that this Honorable Court will grant this petition for further review, or to aquit, or for a new trial.

Daniel Frank Longoria, Jr.
TDCJ #01851803-Coffield
2661 FM 2054
Tenn.Colony, Tx. 75884
Pro se.

I, Daniel Frank Longoria, Jr., TDCJ #01851803, being incarcerated in the TDCJ -CID Coffield unit in Anderson county, Texas, declares that the foregoing is true and correct under the penalty of perjury.

Executed this day of September 23, 2015.

Daniel Frank Longoria, Jr.
#01851803-Coffield
2661 FM 2054
Tenn.Colony, Tx. 75884
Pro se.

## PROOF OF MAILING

I, Daniel Frank Longoria, Jr., TDCJ #01851803, being incarcerated in the TDCJ-CID Coffield unit in Anderson county, Texas, declares that I have placed this Petition for Discretionary Review into the internal mailing system of the Coffield unit on September 23, 2015.

This is true and correct under the penalty of perjury.

Executed this day of September 23, 2015.

Daniel Frank Longoria, Jr.
#01851803-Coffield
2661 FM 2054
Tenn.Colony, Tx. 75884
Pro se.

PETITION NO. PD-0768-15

IN THE

COURT OF CRIMINAL APPEALS

---

DANIEL FRANK LONGORIA, Jr.                    PETITIONER

Vs.

THE STATE OF TEXAS                            RESPONDANT

---

APPENDIX A: THE NINTH COURT OF APPEALS

OPINION AT BEAUMONT IN NO. 09-13-00169-CR

---

On Appeal from the Ninth Judicial District Court of Appeals at Beaumont in No. 09-13-00169-Cr from the 221st Judicial District Court of Montgomery County in No. 12-05-05213-CR.

---

Daniel Frank Lnogoria, Jr.

#01851803-Coffield

2661 FM 2054

Tenn.Colony, Tx. 75884

Pro se.

ORAL ARGUMENT REQUESTED

# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-13-00169-CR
_____

## DANIEL FRANK LONGORIA JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 12-05-05213-CR

## MEMORANDUM OPINION

Appellant Daniel Frank Longoria Jr. (Longoria)[1] was convicted for the murder of Raymundo Zarate Jr. (Zarate). On appeal, Longoria raises two issues, both pertaining to the trial court's admission of certain GPS evidence from an ankle monitor that he was wearing at the time of the murder. He contends that the trial court erred because the evidence was inadmissible under Rules 403 and 404(b) of the Texas Rules of Evidence.

_____

[1]The indictment states "Daniel Frank Longoria, Jr. AKA Daniel Longoria[.]"

1

We overrule both issues and affirm the judgment.

BACKGROUND FACTS

On or about the evening of May 13, 2012, Zarate was shot and killed in the front yard of his home. Earlier that day, Zarate was at a local park with his family when he and another man (later identified as Longoria) got into an argument. The argument developed after Zarate suggested that Longoria should leave the basketball court area in the park. Zarate's son testified that Zarate did not want Longoria near Zarate's family because Longoria was cursing and appeared to be drunk. Later that evening, Longoria and his girlfriend, his girlfriend's daughter, and Longoria's son drove to Zarate's residence to continue the argument. Zarate was shot and killed at his residence.

On the day of the shooting, Longoria was wearing a GPS tracking device placed on him as a requirement of his bond under a different offense out of Fort Bend County, Texas. After the shooting, Longoria fled the scene. He removed the GPS tracking device within two hours of the murder of Zarate. Over a month after the shooting, the police located Longoria and arrested him for the murder of Zarate.

During the murder trial, the prosecution sought to introduce evidence from the GPS device (including the GPS coordinates and mapping, as well as a video relating to the GPS) to establish that Longoria was at the park, that he was in

2

Zarate's neighborhood after the incident at the park, that he was at the scene at the time of the shooting, and that he fled from the scene and disconnected his GPS. Longoria challenged the GPS evidence. Outside the presence of the jury, the trial court held a hearing specifically relating to the GPS evidence, and Longoria voiced the following objections:

> [Defense Counsel]: And, Judge, I just have two objections for the record. The first being that any mention of global positioning system at all in the inference will immediately be from the jury that something bad has happened, he has another offense, somebody in the government is watching him for a reason. That is our first objection.
>
> The second objection is any of the documents he brought with him are not business records.
>
> . . . .
>
> So my first objection is any mention of GPS obviously would have the effect of the government is watching him, there has got to be a reason and it has got to be bad. And, two, to admit these documents as business records, as far as to admit items that are prepared purposely and surely for litigation, and not in the regular course of business.

The trial court overruled the objections and it allowed the admission of evidence from the GPS tracking device, but it did not allow into evidence any testimony or evidence regarding the reason for Longoria's having to wear the device.

ISSUES ON APPEAL

On appeal, Longoria makes no complaint about whether the documents were business records. Rather, Longoria argues that the trial court erred in overruling his objections to the GPS evidence pursuant to Rule 404(b) and Rule 403. *See* Tex. R.

3

Evid. 404(b), 403. Specifically, he contends on appeal that the GPS evidence was inadmissible evidence of other crimes, wrongs, or acts. Further he contends it was more prejudicial than probative and that it was "cumulative evidence." The State contends Longoria failed to preserve an objection under either Rule 404(b) or Rule 403. *See* Tex. R. App. P. 33.1(a).

To preserve error for appellate review, a party's objection generally must be sufficiently specific so as to "'let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Malone v. State*, 405 S.W.3d 917, 925 (Tex. App.—Beaumont 2013, pet. ref'd) (quoting *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009)). In order to raise a Rule 403 complaint, the objecting party must make a 403 objection separate from its Rule 404(b) objection. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g).

After reviewing the record, we conclude that Longoria preserved a Rule 404(b) objection at trial when he challenged the admission of the evidence on the grounds that the GPS evidence (a) referred to another offense he allegedly committed and (b) implied he was being watched for other reasons or because he was bad.

4

As to the Rule 403 objection, the State specifically acknowledged during the hearing on the admissibility of the GPS evidence that the defendant was objecting to the "prejudicial nature" of the GPS evidence, and the trial court expressly found that the probative value of the evidence "outweighs the prejudicial effect, as long as you limit it to the fact that he had this monitor and here is the data." Accordingly, an objection regarding the "prejudicial nature" of the GPS under Rule 403 was before the trial court. Longoria, however, failed to articulate any objection that the evidence was "a needless presentation of cumulative evidence[,]" and there is no indication in the record that the trial court made a "cumulative evidence" ruling. Therefore, we conclude that Longoria failed to preserve the "cumulative evidence" argument for appeal. *See* Tex. R. App. P. 33.1

## STANDARD OF REVIEW

We review a trial court's decision to admit evidence under Rules 404(b) and 403 for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* (quoting *Montgomery*, 810 S.W.2d at 391). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *De La Paz*, 279 S.W.3d at 344.

On appeal, Longoria argues that the GPS evidence constitutes "character evidence" or evidence of an "extraneous act" and that it was inadmissible under Rule 404(b). Longoria contends that the "only true purpose" of the GPS evidence was "to show the jury that [he] has committed, or is alleged to have committed, a crime in another county, thereby prejudicing the jury[.]"

Rule 404(b) expressly provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant in order to show he acted in conformity therewith. Rule 404(b) codifies the common law principle that a defendant should be tried only for the offense for which he is charged and not for being a criminal generally. *Rogers v. State*, 853 S.W.2d 29, 32 n.3 (Tex. Crim. App. 1993); *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining that the defendant is generally to be tried only for the offense charged, not for any other crimes).

Extraneous offense evidence, however, may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b). The list of examples in Rule 404(b) is nonexhaustive. *See Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). For example, extraneous offense evidence may be admissible to demonstrate conduct by a defendant that indicates a consciousness

of guilt. *See Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.); *see also Urtado v. State*, 605 S.W.2d 907, 915 (Tex. Crim. App. 1980) ("Flight is evidence of guilt."). This consciousness-of-guilt evidence may include evidence of a person's conduct (such as "flight" or destruction of evidence) that occurs subsequent to the commission of a crime. *See Torres*, 794 S.W.2d at 598-600. Such evidence is relevant to prove that the person committed the act with which he is charged. *Id.* An extraneous offense may also be admissible to show identity when identity is at issue in the case, or when the defense cross examines witnesses or alleges that someone else committed the crime. *See Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's Rule 404(b) ruling admitting evidence is generally within the zone of reasonable disagreement "if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Texas courts utilize a two-step analysis for determining the admissibility of extraneous offenses or uncharged acts. *Rogers*, 853 S.W.2d at 32-33. Courts determine first whether the evidence is relevant to a material issue in the case and

7

second whether the relevant evidence should be admitted as an exception to Rule 404(b). *Id.* The GPS evidence is relevant to material issues in the case, such as the perpetrator's identity, his flight, and his consciousness of guilt, because this evidence establishes Longoria's movements (both before and after the murder), as well as the timing of his removal of the GPS device. Accordingly, the trial court did not commit error in allowing the GPS evidence into the record because it was admissible for purposes other than character conformity under Rule 404(b). We overrule issue one.

## RULE 403

Longoria also argues the GPS evidence was inadmissible under Rule 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. The Rule 403 balancing factors include, but are not limited to, the following: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). The rules of evidence favor the admission of relevant evidence and carry a

presumption that relevant evidence is more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996).

We conclude that the trial court did not err in its balancing of the Rule 403 factors and in finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under Rule 403. The State articulated a need for the evidence and the GPS evidence occurred close in time to the charged offense. The probative value of the GPS evidence (showing Longoria's movements and actions immediately before, during, and after the commission of the crime) was significant, because this evidence was relevant to establishing the identity element of the crime. In establishing Longoria's flight after the murder, the GPS evidence demonstrated his consciousness of guilt, and tended to rebut the defendant's misidentification theory of defense developed by the defendant during the cross-examination of one of the State's witnesses and during the defendant's closing argument. Although the State spent some time during the trial on the presentation of the GPS evidence, the amount of time was not unreasonable in light of other evidence presented during the trial as a whole. Furthermore, due to the nature of the technical details and technology involved, it was not the type of information that might otherwise cause an inflammatory response. We conclude the trial court did not abuse its discretion in admitting the GPS evidence in this case. It was within the zone of reasonable disagreement for the trial court to find

9

that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Therefore, we overrule issue two.

Having overruled both of appellant's issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 24, 2014
Opinion Delivered June 25, 2014
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

# IN THE NINTH COURT OF APPEALS

09-13-00169-CR

Daniel Frank Longoria Jr.
v.
The State of Texas

On Appeal from the
221st District Court of Montgomery County, Texas
Trial Cause No. 12-05-05213 CR

## JUDGMENT

THE NINTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be affirmed. IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that the judgment of the trial court is affirmed.

Opinion of the Court delivered by Justice Leanne Johnson

June 25, 2014

### AFFIRMED

**\*\*\*\*\*\*\*\*\*\***

Copies of this judgment and the Court's opinion are certified for observance.

Carol Anne Harley
Clerk of the Court

Daniel Doanks Longona, Jr.
#01651803-Lofield
2661 fm 2054
Tenn. Colony, Tx. 75884

Legal mail!

Clerk of the Court of
Criminal Appeals
P.O. Box 12308, Capitol station,
Austin, TX. 78711.

USA FOREVER